UNITED STATES DISTRICT COURT
EASTERN DISTRICT
OF MICHIGAN SOUTHERN DIVISION

DAVID HIEBER,

        Plaintiff,               Case.:  2-22-cv-11417-MFL
                                   Hon. Matthew F. Leitman

vs.


OAKLAND COUNTY, and
KYLE JEN, in his Official and Individual
Capacities,
        Defendant.
_____/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
RIKKI MAYS-REAK (MN# 0402751)
Attorneys for Plaintiff
1024 North Michigan Ave.
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com
_____/


There is no other pending or resolved civil action arising
out of the transaction or occurrence alleged in the complaint.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES the Plaintiff, DAVID HIEBER, by and through his attorneys, THE

MASTROMARCO FIRM, and for his Complaint against the Defendants, OAKLAND

COUNTY, and KYLE JEN, states as follows:

## <u>COMMON ALLEGATIONS</u>

1.  That at all times material hereto Plaintiff is a resident of County of Oakland, State of Michigan and is otherwise domiciled in the State of Michigan.

2.  That Defendant, Oakland County, is a local government unit located in the County of Oakland, State of Michigan and is otherwise domiciled in the State of Michigan.

3.  That Defendant Kyle Jen (Hereinafter referred to as Jen) is a Resident of the County of Oakland, State of Michigan, and is otherwise domiciled in the State of Michigan.

4.  That Plaintiff is a member of a protected class, by virtue of his age.

5.  That in fact, Plaintiff is protected by the Older Workers Benefit Protection Act since he is over 40 years old, and Defendant employs more than 20 employees.

6.  That the Amount in Controversy Exceeds the Sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) exclusive of costs interest and attorney fees.

7.  That venue is proper with this honorable court pursuant to 28 U.S.C. Section 1391.

8.  That This Honorable Court has jurisdiction over Plaintiff's Federal Law Claims Pursuant to 28 U.S.C. Section 1331.

9.  That Plaintiff has worked for Defendant Oakland County since August 29, 1994.

10. That at the time of Plaintiff's unlawful termination he worked as the Equalization Officer for Oakland County.

11. That Defendant Jen is the Director of Management and Budget for Oakland County, Michigan.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

12. That Defendant Oakland has tolerated ageist comments from April M. Lynch where she referred to a group of older employees as "deadwood[1]" and that she intended to "get rid of them".

13. That April M. Lynch has also stated that "we need to get rid of these long term employees and get a new way of thinking in" and "if I hear about another employee working here for 25 years, I'm going to puke… why would anyone want to work somewhere for 25 years"

14. That April M. Lynch refers to secretaries on the 5th floor of the Executive Office as "grandmas" and that April M. Lynch has expressly stated she wanted to get rid of Doreen Pagel who April referenced as a grandma.

15. That on November 12, 2020, April M. Lynch, Deputy County Executive, sent a letter to Oakland Employees, including Plaintiff, subject "Implementation of a Separation and Retirement Incentive" where she stated that the objective was to "enable us to prepare a workforce for the future; one that is competitive, nimble[2], and reflective" (See **Exhibit 1**)

16. That Plaintiff did not sign or enter the 'Separation Agreement.'

17. That thereafter and on October 21, 2021, Defendant Jen sent a text message to Plaintiff requesting a meeting to Discuss "HR matter."

---

[1] Definition from Oxford Languages is "people or things that are no longer useful or productive"

[2] Commonly known by the tale "Jack be nimble Jack be quick" but the definition for nimble is quick and light in movement or action; agile. Synonyms include sprightly, lively, active, quick-moving, and zippy.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

18. That Plaintiff planned to go to Defendant Jen's office around 4:30pm to attend the meeting to discuss this HR matter.

19. That before the 4:30pm meeting, at least two HR representatives for Defendant Oakland and two deputies came to Plaintiff's office, at that time Julie Fischer, an HR Representative, handed Plaintiff a letter and Plaintiff was then confronted with a group of deputies, who immediately escorted him off the property. Plaintiff was instructed that he was to have no contact with any employees of the county, was not to conduct any county business, was not to present himself on-site to any county property, and return his ID badge, laptop, keys to the building and/or office and any other issued property. (See **Exhibit 2** which is the text dated October 21, 2021, at 2:33 P.M. from Defendant Jen to Plaintiff; **See also Exhibit 3**. October 21, 2021, correspondence from Julie Fisher Manager of HR Labor Relations to Plaintiff)

20. That, as noted above, during this same encounter, Plaintiff was then handed the administrative leave memo marked **Exhibit 3**.

21. That subsequently and on the following day October 22, 2021, Defendant Jen forwarded to all employees of Oakland County Equalization Department at 2:16 PM, on Friday, an email informing them that Plaintiff is on leave. Said email implied that Defendant was dangerous, and that "All employees have been advised to work from home today and Monday."

22. Defendant also further advised, that when they returned on Tuesday that they had to "Park in the public parking lot at the front of the building and enter/exit building to the

main entrance only. This will continue until further notice." (See **Exhibit 4** which is

October 22, 2021, email to staff).

23. That the meaning of the above email (**Exhibit 4**) was to suggest to the employees

that Plaintiff was dangerous, that they were all going to work from home until Tuesday,

and when Tuesday arrived they should park in an a certain parking location at the front of

the building and not park anywhere else to ensure their safety and ensure further security

against Plaintiff so as to create the illusion that he was dangerous, that everyone would be

required to enter and exit through the main gate, notwithstanding the fact that the normal

procedure would be to enter through the back of the building.

24. As noted by the email, Jen again, suggested that Plaintiff was dangerous and that it

was Mr. Jen's "Goal to ensure that employees work in a safe environment free of

intimidation, coercion, harassment, retaliation, or discrimination, either in performing

their duties or exercising their rights under federal and state law." (See **Exhibit 4**)

25. That Defendant Jen then encouraged and solicited employees to come forward

with complaints against the Plaintiff, indicating that they were protected under the

Michigan Whistleblower Act, and then suggested that they may have been the "target of

retaliation or threats," and that they should contact Julie Fisher. The email was concluded

by indicating "we will update you as soon as we can regarding other next steps." (**Exhibit**

**4).**

26. That the above email was directly implying, if not directly stating, that Plaintiff

was a danger, and that as such precautionary measures were being instituted, and that

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

anyone should come forward to talk about Plaintiff, i.e., otherwise soliciting their comments and complaints to build a file against the Plaintiff.

27. That in this way Defendant Jen attempted to gin-up[3] comments concerning the Plaintiff.

28. That subsequent to the above email dated October 22, 2021, Plaintiff was required to have a predetermination hearing or *Loudermill* hearing.

29. That Defendants, have a specific procedure for that hearing. Please see **Exhibit 5**.

30. Notwithstanding this elaborate procedure, Defendant sidestepped the procedure as noted by the November 22, 2021, email from Rosie Wood, HR Analyst, to Nakisha Schaney regarding Plaintiff.

31. As noted in this email marked **Exhibit 6**, the hearing was predetermined, and violated policy and *Loudermill*, in so much as it was not meant to be a 'hearing' and was for the purpose of informing the Plaintiff that he was 'terminated'. No due process was provided in violation of policy and *Loudermill*, and no opportunity was provided for evidence to be submitted, all in violation of Defendant's policies. (See **Exhibit 6, and Exhibit 5**).

32. That in fact, as noted by **Exhibit 6**, the notice for the hearing which was attached to the letter directed to the Plaintiff, was entitled "Notice of Intent to Dismiss".

33. That subsequent to the alleged *Loudermill* hearing or predetermination hearing, Plaintiff was provided a termination letter. (See **Exhibit 7**)

---

[3] generate or increase something, especially by dubious or dishonest means.
"the trade press has ginned up a controversy" OXFORD dictionary

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

34. That said letter was provided to the Plaintiff on November 24, 2021, by Julie Fisher, Manager of Employee and Labor Relations, and indicated that Plaintiff's employment was terminated effective November 23, 2021.

35. In violation of all policies and procedures and to prevent the Plaintiff from mounting a defense Plaintiff was specifically told that he was to "refrain from contacting any current Oakland County Equalization staff as there is no longer any business reason for you to do so. Be advised that any attempts to do so will be reported to management." (See **Exhibit 7** Plaintiff's termination letter).

36. That thereafter, Defendants provided a press release to Oakland County indicating that Plaintiff had been terminated. See **Exhibit 8.**

37. That thereafter, and after dragging its feet for months, Defendant initiated a personnel appeal board hearing but violated the rules in doing so by not allowing the Plaintiff access to Oakland County property so as to take part in the personnel Appeal Board Election process as outlined by the Oakland County Merit System and Appeal Board Rules.

38. That Plaintiff's counsel sent 7 Emails and tried to obtain permission to allow potential witnesses to speak to Plaintiff, since they, the witnesses, had been told that they should contact 911 if they saw or were contacted by Plaintiff, and to immediately alert the Defendant. As such, making the witnesses believe that they would be disciplined if they did not follow such directives.

39. That Plaintiff's counsel wrote to corporation counsel for the Defendant Oakland County regarding witnesses and documents requested for the Personnel Advisory Board Hearing.

40. That specifically, Plaintiff requested documents including the Complaint, coaching sessions allegedly provided, personnel file of the Plaintiff and any and all other files maintained on the Plaintiff including the court reporter transcripts for the *Loudermill* hearing that was allegedly conducted, all messages, emails, and texts from certain employees and the full investigative report. Defendants declined to provide any of that information.

41. Additionally, Plaintiff's indicated that they intended to call a number of witnesses who they identified and indicated that some of these people were no longer employees and as such, they would probably need to be called by an affidavit which was the Plaintiff's right.

42. That during the Appeal Board Hearing, Defendant denied the use of any affidavits and refused (in violation of policy) to provide subpoenas for these people. (See Chain of Emails Marked **Exhibit 9)**.

43. That Defendant, in an effort to dissuade employees from cooperating with the Plaintiff during his attempts to exercise his due process rights for a hearing, sent out the November 24, 2021 email to all 78 employees indicating that they should call 911 if they see the Plaintiff anywhere, and even suggested that Plaintiff might even be coming to their home.

44. That on November 24, 2021, at 8:47 A.M. Defendant Jen emailed the 78 employees that Plaintiff had been separated from county employment. He further went on to indicate that "Mr. Hieber has been advised to refrain from contacting staff as there is no business reason to do so". Defendant Jen also advised staff that "Mr. Hieber has been advised to refrain from coming on site at the Oakland Property, as well as the Executive Office Building".

45. That the employees were then instructed by Defendant Jen to "report the nature of contact to HR/Labor Relations… Save voicemail messages… take notes, citing specific words/language used" if they were contacted by Plaintiff.

46. That the employees were also advised "should he appear on site: call 911; Alert Deputies at the main entrance of the building", and after the above had been accomplished, "report status to HR Labor Relations."

47. That the employees were also advised "Should he appear at your home: Call 911."

48. That said defamatory statements by Defendant imply that Plaintiff is a dangerous individual, whom they should contact the police if they see, and also suggested and implied that he may come to their homes, and if he does to call the 911 emergency lines.

49. That said actions on the part of Defendant Jen are defamatory in nature, reckless, and are said and written with malice aforethought concerning the Plaintiff to force him to resign and/or leave the job before having any sort of hearing. Defendant also deprived Plaintiff of due process and was used to discourage employees from contacting the Plaintiff or serving as witnesses at all in his defense.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

50. That in fact, many of the witnesses that Plaintiff intended to call would not cooperate because they were afraid of retaliation in light of the emails sent by Defendant Jen.

51. That Defendant's actions do constitute defamation per se.

52. The Defendant's actions constitute violations of Plaintiff's procedural and substantive due process.

53. That Defendants actions are based in part on the Plaintiff's perceived political affiliations from the prior administration run by the former Executive, L Brooks Patterson in violation of Plaintiff's First Amendment Rights under the US constitution.

54. The Defendant's actions do discriminate against the Plaintiff based on his age and perceived political affiliation.

55. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, bonuses, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any other compensation and fringe benefits lost to Plaintiff as a result of Defendants' actions along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

56. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to,

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

57. That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

58. That Plaintiff hereby claims punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

### COUNT I – AGE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983 & THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

59. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 58 of Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

60. That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

61. That the Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

62. That there is an equal protection right to be free from employment discrimination, including discrimination because of age.

63. That Defendant Oakland subjected Plaintiff to discriminatory treatment because of Plaintiff's age.

64. That all times material hereto, Plaintiff was and is a member of an identifiable class by virtue of his age.

65. That at all times material hereto, Defendants acted under the color of State law.

66. Defendant Jen is not entitled to qualified immunity.

67. Defendant Jen's actions are considered official municipal policy, due to him acting with governmental authority to improperly defame the Plaintiff.

68. That Defendant and Defendant Jen took unconstitutional action that implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by Defendant Oakland. *Scarbrough v. Morgan County Bd. Of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006)

69. That at all times material hereto, Defendants made the decisions to take materially adverse employment action against Plaintiff and to violate his equal protection rights.

70. That Defendants subjected Plaintiff to unfair treatment based on his age in one or more of the following ways, but not limited to:

> a. In creating bogus false and defamatory reasons for terminating the Plaintiff, such as accusing him of discrimination, to demean and embarrass him based on false reasons, because of his age;

> b. In creating an overall plan to get rid of the older employees whom Defendant viewed as "deadwood" or "grandmas," of which Plaintiff was considered one;

c.  In carrying out their overall ageist plan against the Plaintiff because he would not take the 'buy-out.' (See **Exhibit 1**)

d.  In escorting Plaintiff by armed guards, out of the building on the day of his separation for purposes of demeaning him, because of his age.

e.  In defaming the plaintiff through emails, implying that Plaintiff was, and is, a threat to employees' wellbeing and safety;

f.  In depriving Plaintiff of a Loudermill hearing, and in fact specifically telling the Plaintiff that the decision to terminate had been made already and that Loudermill wasn't the time for him to respond to the charges, even though it was his Constitutional right.

g.  In thwarting the Plaintiff's preparation for the Appeal Board Hearing by using scare tactics on witnesses/employees, to chill their testimony by telling the employees that they were not to talk to the plaintiff and report any such contact by Plaintiff to the Defendant's;

h.  Plaintiff was not allowed to use witnesses' affidavits in the Appeal Board Hearing, despite the procedures and policies saying he could do so.

i.  In violation of policy by refusing to allow the Plaintiff to subpoena witnesses at the PAB hearing;

j.  In accepting job applications for Plaintiff's position, before he was allegedly terminated;

k.  In terminating the Plaintiff's employment before the decision for the appeal board hearing was finalized.

l.  In claiming they wanted to settle with the Plaintiff, negotiating a mutually

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

agreed upon settlement of $140,000.00 dollars, which was negotiated, and then having the board chair (also head of the PAB committee) withdraw the offer;

71. That Defendants' proffered reasons for taking the above referenced adverse employment actions are either not based in fact, did not actually motivate the decision, and/or were too insignificant to warrant the action taken.

72. That the Defendant's did terminate the Plaintiff because of his age, and did defame him to his co-employees in emails, to frustrate his rights, and to get him to leave or quit the job, so as to orchestrate a constructive discharge.

73. That Defendant Oakland is a municipality and is liable for the above-referenced discrimination.

74. That Defendant Jen's actions constitute discrimination based on age in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

75. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, bonuses, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any other compensation and fringe benefits lost to Plaintiff as a result of Defendants' actions along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

76. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to,

emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

77. That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

78. That Plaintiff further claims expert witness fees pursuant to 42 U.S.C. § 1988(c).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in Plaintiff's favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT II – AGE DISCRIMINATION IN VIOLATION OF THE ELLIOTT LARSEN CIVIL RIGHTS ACT

79. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 59 of his Common Allegations, paragraphs 59 through 78 in Count I, word of word and paragraph for paragraph, as if fully restated herein.

80. That the Elliott-Larsen Civil Rights Act makes it unlawful for an employer to fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of age.  MCL 37.2202(1)(a).

81. That at all times material hereto, Defendant constitutes an "employer" as the term is defined by the Act.  MCL 37.2201(1).

82. That Defendant Oakland subjected Plaintiff to discriminatory treatment because Plaintiff's age.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

83. That all times material hereto, Plaintiff was and is a member of an identifiable class by virtue of his age.

84. That at all times, Plaintiff was and is qualified for the position of Equalization Director.

85. That Defendant did discriminate against the Plaintiff and did so because of his age.

86. That Defendants subjected Plaintiff to discriminatory treatment based on his age in one or more of the following ways, but not limited to:

    a. In creating bogus false and defamatory reasons for terminating the Plaintiff, such as accusing him of discrimination, to demean and embarrass him based on false reasons, because of his age;

    b. In creating an overall plan to get rid of the older employees whom Defendant viewed as "deadwood" or "grandmas," of which Plaintiff was considered one;

    c. In carrying out their overall ageist plan against the Plaintiff because he would not take the 'buy-out.' (See **Exhibit 1**)

    d. In escorting Plaintiff by armed guards, out of the building on the day of his separation for purposes of demeaning him, because of his age.

    e. In defaming the plaintiff through emails, implying that Plaintiff was, and is, a threat to employees' wellbeing and safety;

    f. In depriving Plaintiff of a Loudermill hearing, and in fact specifically telling the Plaintiff that the decision to terminate had been made already and that Loudermill wasn't the time for him to respond to the charges, even though it was his Constitutional right.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

g.  In thwarting the Plaintiff's preparation for the Appeal Board Hearing by using scare tactics on witnesses/employees, to chill their testimony by telling the employees that they were not to talk to the plaintiff and report any such contact by Plaintiff to the Defendant's;

h.  Plaintiff was not allowed to use witnesses' affidavits in the Appeal Board Hearing, despite the procedures and policies saying he could do so.

i.  In violation of policy by refusing to allow the Plaintiff to subpoena witnesses at the PAB hearing;

j.  That Defendant's, in an effort to obtain more "nimble" employees, accepted job applications for Plaintiff's position before Plaintiff was terminated.

k.  In terminating the Plaintiff's employment before the decision for the appeal board hearing was finalized.

l.  In claiming they wanted to settle with the Plaintiff, negotiating a mutually agreed upon settlement of $140,000.00 dollars, which was negotiated, and then having the board chair (also head of the PAB committee) withdraw the offer;

87. That Defendant Oakland's above named adverse actions were pretextual in nature.

88. That Defendants' proffered reasons for taking the above referenced adverse employment actions are either not based in fact, did not actually motivate the decision, and/or were too insignificant to warrant the action taken.

89. That the Defendant's did terminate the Plaintiff because of his age, and did defame him to his co-employees in emails, to frustrate his rights, and to get him to leave or quit the job, so as to orchestrate a constructive discharge.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

90. That Defendant Oakland is a municipality and is liable for the above-referenced discrimination.

91. That Plaintiff suffered said adverse action under circumstances that give rise to an inference of age discrimination

92. That Defendant's actions constitute age discrimination in violation of the Elliott-Larsen Civil Rights Act.

93. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has experienced and will continue to experience economic damages, including, but not limited to, lost wages, back pay, front pay, raises, bonuses, health, dental, vision, and/or life insurance benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any other compensation and fringe benefits provided by Defendant along with an additional amount to offset any negative tax consequences of recovery.

94. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer from severe non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, humiliation, embarrassment, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

95. That Plaintiff hereby claims the costs of this litigation, including reasonable attorney fees and witness fees, pursuant to MCL 37.2801(3) and MCL 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

## COUNT III – DENIAL OF DUE PROCESS IN VIOLATION OF THE 14TH AMENDMENT, 42 U.S.C. §1983

96. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 58 of his Common Allegations, paragraphs 59 through 78 in Count I, and paragraphs 79 through 95 in Count II word of word and paragraph for paragraph, as if fully restated herein.

97. That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

98. That the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; see also *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

99. That a property interest is a legitimate claim of entitlement to a tangible benefit secured by "existing rules or understandings" *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

100. That "[a] public employee is entitled to procedural due process—including the opportunity for a hearing—and substantive protections if he stands to lose a constitutionally protected property or liberty interest." *Houchens v. Beshear*, 441 F. Supp. 3d 508, 517 (E.D. Ky. 2020).

101. That the Supreme Court has consistently held that a government employer cannot deprive an employee's property interest unless the employer, before depriving the property

interest, provides the employee with a notice of the charges, an explanation of the employer's evidence, and an opportunity to respond and present reasons the action should not be taken. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

102. That at all times material hereto, Defendants and/or their agents acted under the color of State law.

103. That Plaintiff has a constitutionally protected liberty and/or property interest Defendants interfered with.

104. That Plaintiff must "be able to point to some statutory or contractual right conferred by the state which support a legitimate claim to continued employment." *Bailey v. Floyd County Bd. Of Educ. By and Through Towler,* 106 F.3d 135,141 (6th Cir. 1997)

105. Plaintiff had a written contract with Defendant ensuring his property right in his employment.

106. That Defendant Oakland violated Plaintiff's procedural due process rights in one or more of the following ways, but not limited to:

> a.  Violating *Loudermill* hearing rights by not affording Plaintiff the opportunity to be heard.

> b.  Defendant violating their own procedures and policies in an attempt to terminate Plaintiff before his *Loudermill* hearing.

> c.  In failing to provide Plaintiff with a predetermination hearing or *Loudermill* hearing and making decisions prior to providing a notice of loudermill which would result in Plaintiff's termination;

> d.  In failing to provide any rights under *Loudermill*

e. In failing to allow Plaintiff to participate in the selection process for the employee representative of the panel that is going to be sitting on the post termination hearing;

f. In telling Plaintiff that he is not allowed onto county property to take part in the personnel appeal board election process as outlined and allowed by the Oakland County merit system an appeal board's rules;

g. In failing and refusing to accept affidavits from Plaintiff's witnesses, when it is allowed under the rules;

h. In refusing to issue subpoenas for individuals who were not cooperating with the Plaintiff for the purpose of the hearing, as would be Plaintiff's right;

i. In quashing a negotiated settlement between Defendants' attorneys and the Plaintiff's attorneys after specifically agreeing on a number;

j. In allowing biased individuals to sit on the PAB committee who not only would sit in determination as to whether a settlement should be agreed upon, but also, was on the selection committee and hired a new employee to replace the Plaintiff;

k. In terminating Plaintiff in October 2020

l. In replacing Plaintiff with a new head of equalization before due process or the PAB committee was resolved.

m. In removing Plaintiff from office on October 21, 2021, and as of the date of this complaint, still has not resolved the issue.

107.  That substantive due process protects employee's fundamental rights in life, liberty, and property from arbitrary deprivation.

108.  That Defendants violated Plaintiff's due process rights by not treating Plaintiff fairly in one or more of the following ways, but not limited to:

      a.  In removing Plaintiff by armed guard from his office without warning on October 21, 2021;

      b.  In sending out email to his employees to defame him, providing emails to 78 persons informing them that Plaintiff had been removed from the property and could not come back to the property

      c.  To make statements, or throw stones so to speak, against Plaintiff telling employees that if they do so not to worry because they should be protected under the Whistleblower laws, i.e soliciting complaints.

      d.  Telling employees to watch the Plaintiff and that he his not to talk to anyone, nor is anyone to talk to them and he has been excluded from campus;

      e.  In telling employees to contact Oakland government and their supervisors if they are to see Plaintiff on campus and to call 911;

      f.  In telling employees that they are not to talk to Plaintiff

      g.  In making Plaintiff look like a deranged individual that might harm them, indicating that he may come to their home;

      h.  In telling Plaintiff that he cannot 'talk to anyone", and exclude him from the campus at Oakland government.

      i.  In making charges against the Plaintiff that were deliberately false and

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

defamatory;

j.   In ignoring seven emails sent by the Plaintiff's counsel to allow potential witnesses to speak to the Plaintiff;

k.   In hiring a new employee that was younger than the Plaintiff by virtue of his age only;

109. That Plaintiff has a constitutionally protected liberty and property interest in his employment.

110. That Plaintiff has a constitutionally protected liberty and property interest in not being terminated for unjust and false and defamatory reasons.

111. That Defendant interfered with Plaintiff's constitutionally protected liberty and/or property interest by violating procedure and policy of the County and terminating his employment.

112. That when a protected liberty or property interest is implicated, "the right to some kind of prior hearing is paramount".  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570; 92 S. Ct. 2701 (1972).

113. That as one District Court has noted:

The idea behind procedural due process—including in the context of a state-created liberty interest—is that the interest cannot be taken away arbitrarily. Instead, a state-created liberty interest can be taken away, if at all, only pursuant to procedures reasonably geared (under the circumstances) to obtaining an accurate determination as to whether, under applicable criteria, it should be taken away.

Memphis A. Phillip Randolph Institute v. Hargett, 482 F. Supp. 3d 673, 684 (M.D. Tenn. 2020).

114. That Defendants did not provide Plaintiff with any process prior to removing him

from his office and terminating his employment.

115. That Defendants interfered with Plaintiff's liberty and/or property interest by terminating his employment in failing to provide him any due process.

116. That at all times material hereto, Defendants acted pursuant to an official policy or custom of Defendant Oakland County.

117. That at all times material hereto, Defendant Oakland County had delegated final policy-making authority relating to defamatory statements regarding the Plaintiff and informing employees to report him, and that he was dangerous, and as such, Defendant Jen was the person with final policy-making authority relevant to the actions taken in this case.  See also Pembaur v. City of Cincinnati, 475 U.S. 469, 483; 106 S. Ct. 1292 (1986)(plurality).

118. Defendant Jen acted in accordance with said official policy or custom.

119. That Defendant Oakland County is not entitled to any type of immunity as a municipal entity.  Myers v. Potter, 422 F.3d 347, 352 (6th Cir. 2005).

120. Defendant Jen is not entitled to qualified immunity.

121. That the requirement to provide an individual with some kind of due process prior to infringing upon or taking away one's liberty or property interest is clearly established. Roth, supra; Vitek v. Jones, 445 U.S. 480, 488; 100 S. Ct. 1254 (1980); see also Wolff v McDonnell, 418 U.S. 539, 557-558; 94 S. Ct. 2963 (1974).

122. That Defendants interfered with Plaintiff's liberty and/or property interest in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

123. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has

suffered and will continue to suffer economic damages, including lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences that would be incurred as a result of recovery.

124.  That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

125.  That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

126.  That Plaintiff hereby claims punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT IV- POLITICAL AFFILIATION RETALIATION IN VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

127.    That Plaintiff incorporates by reference the allegations contained in

paragraphs 1 through 58 of his Common Allegations, paragraphs 59 through 78 of

Count I, and paragraphs 79 through 95 of Count II, and paragraphs 96 through 126

of Count III word for word and paragraph for paragraph, as if fully restated herein.

128.    That 42 U.S.C. § 1983 provides that every person who, under the color

of State law, deprives a citizen of the United States any right or privileges secured

by the Constitution shall be liable to the injured party at law or in equity.

129.    That the First Amendment to the United States Constitution provides:

Congress shall make no law … or abridging the freedom of speech, or of the
press; or the right of the people peaceably to assemble, and to petition the
Government for redress of grievances.
U.S. CONST. amend. I.

130.    That the First Amendment provides for freedom of political beliefs

and/or affiliation. *See Dye v. Office of the Racing Commission*, 702 F.3d 286 (6th

Cir. 2012).

131.    That the First Amendment prohibits Defendant from retaliating against

Plaintiff based on political affiliation or support. See *Rutan v. Republican Party of

Illinois*, 497 U.S. 62 (1990).

132.    That Plaintiff's inherent duties when he was the Equalization Officer are

not political in character. *Mumford v. Basinski*, 105 F.3d 264, 271–72 (6th Cir.1997)

133.    That Defendant's did not have a compelling interest in enforcing a

political affiliation in order to have an effective performance by Plaintiff in a public

office. *Branti v. Finkel*, 445 U.S. 507, 518 (1980).

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

134.    That Plaintiff's position was not a policymaking position or a position that requires confidential relationships. *Peterson v. Dean*, 777 F.3d 334, 342 (6th Cir. 2015).

135.    That at no time was a political affiliation an appropriate consideration for Plaintiff's position.

136.    That "[a] dismissal or other adverse employment action toward a public employee based solely on the employees actual or mistaken perception by the Defendant of Plaintiff's private political beliefs or affiliation presumptively" violates the Constitution and is actionable pursuant to the Fourteenth Amendment as 42 U.S.C. § 1983. *See Dye, supra*.

137.    That the term "political affiliation" includes not only partisan political interests and concerns, but also personal beliefs and commitments whether actual or perceived by the public employer. *See Dye*, *supra*; *see also Monks v. Marlinga*, 732 F. Supp. 749, 753 n.2 (E.D. Mich. 1990), *aff'd* 923 F.2d 423 (6th Cir. 1991).

138.    That the constitutional protections relating to political affiliation extend to adverse employment actions invoking non-ideological political factions within a political party. *McCloud v. Testa*, 97 F.3d 1536, 1553 (6th Cir. 1996).

139.    That Plaintiff was hired under L Brooks Patterson, and held his position for 27 years and until a new politician took office.

140.    That Plaintiff as were many of his co-administrator employees had been

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

hired under the L Brooks Patterson administration.

141.    That Plaintiff was perceived to be a member of that organization and administration, and as such was considered "deadwood" and to be disposed of and replaced by the new administration.

142.    That Defendant acted on that belief that the Plaintiff was a member of a different political party and persuasion and sought to rid itself of the Plaintiff.

143.    That Plaintiff was subjected to an adverse employment action by virtue of Defendant's termination of his employment.

144.    That Defendant's proffered reasons for Plaintiff's termination are wholly pretextual in nature.

145.    That Defendant's actions constitute political affiliation retaliation in violation of the First Amendment to the United States Constitution as actionable pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983.

146.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain severe economic damages, including but not limited to, lost wages, back pay, front pay, health, dental, vision and/or life insurance, retirement and/or pension benefits, and any other compensation and benefits lost by virtue of Plaintiff's termination.

147.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain severe non-economic damages,

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

including but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

148.    That pursuant to 42 U.S.C. § 1988(b), Plaintiff hereby claims the costs of this action and reasonable attorney fees.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT V – DEFAMATION AGAINST DEFENDANT JEN

149.    That Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 58 of his Common Allegations, paragraphs 59 through 78 of Count I, paragraphs 79 through 95 of Count II, paragraphs 96 through 126 of Count III, and paragraphs 127 through 148 on Count IV word for word and paragraph for paragraph, as if fully restated herein.

150.    That on October 22, 2021, Defendant Jen sent 78 employees an email that implied Defendant was dangerous, and that "All employees have been advised to work from home today and Monday."

151.    That in the same email, Defendant Jen further advised these 78 employees that when they return on Tuesday that they had to "Park in the public parking lot at the

front of the building and enter/exit building to the main entrance only. This will continue until further notice" (See **Exhibit 4**)

152.    That the email created an illusion that Plaintiff was dangerous, and that everyone would be required to enter and exit through the main gate, notwithstanding the fact that the normal procedure would be to enter through the back of the building.

153.    Furthering the intent of the email, Defendant Jen states it's his "Goal to ensure that employees work in a safe environment free of intimidation, coercion, harassment, retaliation, or discrimination, either in performing their duties or exercising their rights under federal and state law."

154.    Defendant Jen then encouraged and solicited employees to come forward with complaints against Plaintiff and indicated that the employees may have been a "target of retaliation or threats" by Plaintiff.

155.    That **Exhibit 4** directly implying, if not stating, that Plaintiff is a danger and that as such, precautionary measures were being instituted, and that anyone should come forward to talk about Plaintiff.

156.    That Defendant Jen emailed the 78 employees again on November 24, 2021 stating that "Mr. Hieber has been advised to refrain from contacting staff as there is no business reason to do so" and that "Mr. Hieber has been advised to refrain from coming on site at the Oakland Property, as well as the Executive Office Building."

157.    That in said email (**Exhibit 4**) employees were instructed by Defendant Jen to "report the nature of contact to HR/Labor Relations. save voicemail messages, take notes, citing specific words/language used" if they were contacted by Plaintiff.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

158.     That the employees were also advised "should he [Plaintiff] appear on site: call 911; Alert Deputies at the main entrance of the building", and after the above had been accomplished, "report status to HR Labor Relations."

159.     That the employees were also advised "Should he appear *at your home*: Call 911" (emphasis added).

160.     That Defendant Jen's false allegations have no basis in fact and were made with malicious intent in an effort to scare the 78 employees into not talking to Plaintiff or testifying on his behalf.

161.     That the above communications from Defendant Jen hurt Plaintiff's professional reputation and tends to lower Plaintiff in the estimation of the community and/or to deter others from associating or dealing with Plaintiff.

162.     That Defendant Jen made false and defamatory statements concerning Plaintiff.

163.     That false and defamatory statements are not privileged communications.\

164.     That Defendant Jen made the false and defamatory statements to third parties

165.     That Defendant Jen acted with negligence, recklessness and/or malice in making the false and defamatory statements.

166.     That Defendant Jen has refused to retract said statements subjecting Defendant to punitive damages.

167.     That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained and will continue to sustain severe economic damages, including but not limited to lost wages, back pay, front pay, raises, promotions, bonuses, health

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

insurance, dental insurance, vision insurance, life insurance, pension and/or retirement benefits, investment opportunities, employer contributions and any other fringe benefits.

168.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained and will continue to sustain severe non-economic damages, including but not limited to emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, depression anxiety, denial of social pleasures and disruption of lifestyle.

169.    That Plaintiff has demanded retraction of the above defamatory statements and provided a reasonable opportunity for Defendant Covenant to retract the same. (**Exhibit 10**- Retraction Demand).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully Submitted,

THE MASTROMARCO FIRM.

DATED:  June 30, 2022          By:   /s/ *Victor J. Mastromarco, Jr.*
                                        Victor J. Mastromarco, Jr. (P34564)
                                        Attorney for Plaintiff
                                        1024 N. Michigan Ave.
                                        Saginaw, MI 48602
                                        (989) 752-1414

RELIANCE ON DEMAND FOR TRIAL BY JURY

NOW COMES the Plaintiff, DAVE HIEBER by and through his attorneys, THE

MASTROMARCO FIRM, and hereby  relies upon his previous demand for a trial by jury

of all issues in this cause of action unless expressly waived.

Respectfully Submitted,

THE MASTROMARCO FIRM.

DATED: June 30, 2022      By:          /s/*Victor J. Mastromarco, Jr*
                                      Victor J. Mastromarco, Jr. (P34564)
                                      Attorney for Plaintiff
                                      1024 N. Michigan Ave.
                                      Saginaw, MI 48602
                                      (989) 752-1414