UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID HIEBER,                                    Case No. 22-11417

    Plaintiff,                                F. Kay Behm
v.                                               United States District Judge

OAKLAND COUNTY, *et al.*,

    Defendants.
_____/

**OPINION AND ORDER DENYING MOTION**
**TO ENFORCE SETTLEMENT (ECF No. 29)**

**I.     PROCEDURAL HISTORY**

On April 14, 2023, Plaintiff, David Hieber, filed a motion to enforcement settlement. (ECF No. 29). This matter is fully briefed. (ECF Nos. 33, 35). The court conducted an evidentiary hearing on September 27, 2023, at which Hieber, Christopher Trebilcock (counsel for Defendants), Daniel Klemptner (the Chief of Labor and Employee Relations for Oakland County), and Donald J. Gasoriak (mediator) testified. After hearing the testimony presented by the witnesses, considering the oral and written arguments presented by counsel, and the documentary evidence submitted, the court denied the motion to enforce settlement. The court expands on its reasoning for denying the motion as set forth below.

1

## II. FACTUAL BACKGROUND

Hieber maintains that the parties reached a settlement agreement for $250,000, plus the facilitation fees, during a facilitation with mediator Donald J. Gasiorek, which took place on February 21, 2023. Hieber says that he questioned whether the County's representative had settlement authority because there was a previous settlement offer made and later withdrawn because of lack of approval. According to Hieber, he contacted Gasiorek and advised him that he accepted the County's offer and thus, the parties had reached an agreement on all material terms. At the hearing, Hieber testified that he asked Gasoriek at the beginning of the mediation process whether counsel for the County had the authority to settle the case and was assured that he did. Hieber also acknowledged that he was aware of the claims review committee process required to approve settlements over a certain dollar amount. He did not ask Gasoriek, however, if the County had already gone through the process of obtaining the necessary approvals before participating in the mediation.

The County explains that the Liability Claims and Workers Compensation Policy and Procedures ("Claims Policy") governs Defendants' ability to enter into a settlement agreement that includes a payment by Oakland County to Hieber for resolving his lawsuit. (ECF No. 29-5). The Claims Policy states that settlements

ranging from $0 - $25,000 require the approval of Corporation Counsel (for litigation matters) or the Risk Manager (for claims that have not resulted in litigation). *Id.* Settlements ranging from $25,000 - $100,000 require the approval of the Board of Commissioners' Claims Review Committee. Settlements of $100,000 and above require the approval of the Board of Commissioners' Finance Committee, after recommendation of the Claims Review Committee. *Id*. According to Defendants, the Claims Review Committee rejected the proposed settlement value.

According to the County, before this lawsuit was filed, these approval requirements were previously communicated to Hieber's counsel on May 4, 2022, when then-Senior Assistant Corporation Counsel, Dan Klemptner, advised Hieber's counsel that he would "have to appear before two different committees of the Board of Commissions (Claims committee and finance committee) to get final approval for the settlement." (ECF No. 29-2, PageID.332). Although the parties had discussed potential resolution at that time, they were unable to reach a final resolution of the dispute because the proposed monetary settlement was not approved by the Claims Review Committee. In post-suit settlement negotiations, Defendants' counsel again communicated to Hieber's counsel that a

proposed settlement amount should result in obtaining the "required approvals" if it was accepted by Hieber. (ECF No. 29-4, PageID.336).

The County disputes Hieber's characterization of the mediation, asserting that it did *not* make an offer of $250,000. According to the County, the parties had reached a stalemate and the mediator proposed making a "mediator's recommendation" in the amount of $250,000. At this point, Defendants say the mediation ended without the parties agreeing to a number that Defendants would seek approval from at the necessary committees. Defendants assert that later that night, Hieber's counsel contacted the mediator and stated that Hieber would accept a settlement of $250,000. However, Defendants say they never accepted a settlement of $250,000 and told the mediator they would seek authority to settle for that amount. At the evidentiary hearing, Gasiorek testified that he believed Trebilcock had the authority to settle the matter from the County Executive, and he never indicated that additional levels of approval were not necessary. Gasiorek also testified that he made a mediator's recommendation of $250,000, but that Oakland County never made an offer in that amount. However, he believed that Trebilcock had the authority to settle for that amount. After the mediation concluded, Hieber's counsel informed Gasoriek that Hieber would accept $250,000 to settle the case. Gasoriek testified that he then

contacted Trebilcock, who gave him the impression that the County would accept the $250,000.

Trebilcock testified that he was not given full authority to settle the matter going into the mediation. Rather, he had a number through corporation counsel that the County administration would be comfortable presenting and advocating for in the claims review process. When Gasoriek reached out to him and presented the $250,000 mediator's number Trebilcock said "good" and indicated that he thought he could get that approved. Hieber's counsel reached out to Gasiorek questioning why the matter had not been placed on the review committee agenda and Trebilcock followed up with Hieber's counsel, explaining that the administration was still trying to line up sufficient votes for approval, but it looked like approval was not likely.

On April 27, 2023 (after Hieber's motion was filed), the Claims Review Committee met to consider whether to agree to a $250,000 settlement and voted to not approve a settlement with Hieber. (ECF No. 33, Ex. 1, PageID.372-374). Based on this decision, Defendants were unable to enter into a settlement agreement with Hieber for the proposed amount.

5

## III. ANALYSIS

The Sixth Circuit has long recognized that a district court has the inherent authority to enforce settlements in pending litigation. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). Before a court can enforce a settlement agreement, however, it must determine that an agreement has been reached on all material terms. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). Whether the parties reached an agreement is a question of fact to be decided by the district court. *Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 717 (6th Cir. 2010) (citing *RE/MAX*, 271 F.3d at 645-46). An evidentiary hearing is required unless the agreement is clear and unambiguous and there are no remaining material questions of fact. *RE/MAX*, 271 F.3d at 646.

Because settlement agreements are a type of contract, they are governed by and reviewed under state contract law. *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). Under Michigan law, a contract requires an offer, acceptance, and mutual asset or a "meeting of the minds" on all essential terms. *Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 452-53 (2006) (citations omitted). An offer is the "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id*. at 453. Acceptance requires an

6

individual to manifest an intent to be bound by the offer by "voluntarily undertaking some unequivocal act sufficient for that purpose." *Id*.  Unless acceptance is unambiguous and in strict conformance with the offer, no contract is formed.  *Clark v. Al-Amin*, 309 Mich. App. 387, 394 (2015).  Whether there has been a meeting of the minds will be judged by an objective standard, and a court must consider the relevant circumstances surrounding the transaction, any writings or oral statements, and any other relevant conduct by which the parties manifested their intent.  *Innotext, Inc. v. Petra'Lex USA Inc.*, 694 F.3d 581, 589 (6th Cir. 2012) (applying Michigan law).

In his initial motion, Hieber's argument focused primarily on Defendants' apparent failure to pursue the approval process.  (ECF No. 29, ¶¶ 38-42).  After learning that the settlement was rejected in the claims review process, Hieber now focuses his argument on the other bases for his motion, that Defendants "failed to give its attorneys and representatives any authority to settle this matter despite the fact that Defendant[s] made it appear and stated [they] had authority to settle" and that Defendants' counsel had apparent authority to settle.  *Id*. at ¶ 43, ¶ 28; *see also* ECF No. 35.  As to the first issue, Hieber seems to suggest that Defendants violated Local Rule 16.4(e)(5) because their counsel did not have "authority" to settle.  Local Rule 16.4(e)(5) provides:

7

> All parties or individuals with settlement authority must attend the mediation session(s), unless the court orders otherwise. Corporate parties must be represented by an agent with authority to negotiate a binding settlement. In cases involving insurance carriers, an insurer representative with settlement authority must attend in person. Each party must be accompanied by the lawyer expected to be primarily responsible for handling trial of the matter. The court will excuse a party or lawyer from attending in person only on a showing of extraordinary circumstances.

E.D. Mich. L.R. 16.4(e)(5). Even if the court were to interpret this rule as somehow requiring an attorney to circumvent the approval process prior to participating in the mediation process in order to have "settlement authority," (for which Hieber provides no authority), Hieber also does not offer any authority for the proposition that the sanction for its violation is enforcement of what he says are the terms of the settlement. Even where attendance by a person with settlement authority is required by *court order*, and not just local rule, sanctions are limited to the imposition of fees and costs and those sanctions identified in Rule 37(b)(2)(A)(ii)-(vii), not of which include enforcement of a purported settlement agreement. *See e.g.*, *Pucci v. 19th District Court*, No. 07-10631, 2009 WL 596196, at *7 (E.D. Mich. Mar. 6, 2009) (In the context of settlement conferences, "courts allow sanctions under Rule 16(f) when a party violates a

Case 4:22-cv-11417-FKB-EAS ECF No. 77, PageID.3122 Filed 03/27/24 Page 9 of 11

Court's order to make available representatives with settlement authority.").[1] Thus, any violation of Local Rule 16.4(e)(5) does not appear to lead to the enforcement of a settlement agreement as described by Hieber.

As to the second issue, Hieber suggests that Defendants' counsel had apparent authority to settle and thus, the settlement described by Hieber is enforceable. It is true that, under Michigan law, "[a]n attorney has the apparent authority to settle a lawsuit on behalf of his or her client." *Kloian v. Domino's*

---

[1] Federal Rule of Civil Procedure 16(f) provides:

> (1) In General. On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
>
>> (A) fails to appear at a scheduling or other pretrial conference;
>> (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or
>> (C) fails to obey a scheduling or other pretrial order.
>
> (2) Imposing Fees and Costs. Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Federal Rule of Civil Procedure 37(b)(2)(A)(ii)-(vii) provides for the following sanctions:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Pizza L.L.C.*, 273 Mich. App. 449, 453 (2006).  For example, in *Greer v. City of Highland Park*, No. 15-12444, 2019 WL 578550 (E.D. Mich. Jan. 10, 2019), the court enforced a settlement based on the attorney's "apparent authority to negotiate" on behalf of the individual defendants.  *Id*.  That apparent authority arose from the settlement conference notice requiring the presence of parties with "full settlement authority" at the settlement conference and the placement of the settlement on the record by counsel.  *Id*.

Here, however, the evidence shows that the authority of Defendants' counsel was expressly circumscribed by the Claims Policy.  More specifically, Defendants' acceptance of the mediator's number was contingent on the approval process outlined in the Claims Policy and Hieber and his counsel were aware of that fact.  Moreover, Defendants' attorney conveyed that information to the mediator.  Even if the County had "made an offer" to settle this matter for $250,000, it is also clear that any settlement in that amount still required approval.  That fact is apparent from the pre-facilitation emails as well as the testimony presented at the hearing.  There is no evidence of a specific, express representation that either approval was no longer required or that it had already been obtained before the facilitation.  Accordingly, the court cannot enforce any settlement where Defendants' counsel's authority was so expressly

10

circumscribed, and where Hieber's counsel and the mediator were made aware of the limitation on settlement authority.  In these circumstances, the court finds that there was no mutual assent on all material terms and regardless of whether Trebilcock had actual or apparent authority to enter a settlement, there was never a clear and unambiguous offer and acceptance to settle this matter.

**IV.   CONCLUSION**

For these reasons and those stated on the record at the September 27, 2023 hearing, motion to enforce settlement is **DENIED**.

**SO ORDERED**.

Date: March 27, 2024                                    s/F. Kay Behm
                                                        F. Kay Behm
                                                        United States District Judge